**PUBLISHED**

Filed December 21, 2005

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

Jose Padilla,

*Petitioner-Appellee,*

v.

C. T. Hanft, U.S.N. Commander,
Consolidated Naval Brig.,

*Respondent-Appellant.*

No. 05-6396
(CA-04-2221-26AJ)

---

# ORDER

---

The motion filed by the government for authorization to transfer petitioner from military custody in the state of South Carolina to civilian law enforcement custody in the state of Florida is denied. The suggestion that the court's opinion of September 9, 2005, be withdrawn is denied.

Judge Luttig wrote an opinion in which Judge Michael concurred. Judge Traxler wrote a separate opinion concurring in part.

For the Court

/s/ Patricia S. Connor
Clerk

LUTTIG, Circuit Judge:

Before the court is the government's motion pursuant to Supreme Court Rule 36 for authorization to transfer Jose Padilla immediately out of military custody in the State of South Carolina and into the custody of federal civilian law enforcement authorities in the State of

Florida, together with its suggestion that we withdraw our opinion of September 9, 2005, in which we held that the President possesses the authority under the Authorization for the Use of Military Force to detain enemy combatants who have taken up arms against the United States abroad and entered into this country for the purpose of attacking America and its citizens from within.

Because we believe that the transfer of Padilla and the withdrawal of our opinion at the government's request while the Supreme Court is reviewing this court's decision of September 9 would compound what is, in the absence of explanation, at least an appearance that the government may be attempting to avoid consideration of our decision by the Supreme Court, and also because we believe that this case presents an issue of such especial national importance as to warrant final consideration by that court, even if only by denial of further review, we deny both the motion and suggestion. If the natural progression of this significant litigation to conclusion is to be pretermitted at this late date under these circumstances, we believe that decision should be made not by this court but, rather, by the Supreme Court of the United States.

I.

The relevant events preceding the government's motion are as follows.

The government has held Padilla militarily for three and a half years, steadfastly maintaining that it was imperative in the interest of national security that he be so held. However, a short time after our decision issued on the government's representation that Padilla's military custody was indeed necessary in the interest of national security, the government determined that it was no longer necessary that Padilla be held militarily. Instead, it announced, Padilla would be transferred to the custody of federal civilian law enforcement authorities and criminally prosecuted in Florida for alleged offenses considerably different from, and less serious than, those acts for which the government had militarily detained Padilla. The indictment of Padilla in Florida, unsealed the same day as announcement of that indictment, made no mention of the acts upon which the government purported to base its military detention of Padilla and upon which we had con-

cluded only several weeks before that the President possessed the authority to detain Padilla, namely, that Padilla had taken up arms against United States forces in Afghanistan and had thereafter entered into this country for the purpose of blowing up buildings in American cities, in continued prosecution of al Qaeda's war of terrorism against the United States.

The announcement of indictment came only two business days before the government's brief in response to Padilla's petition for certiorari was due to be filed in the Supreme Court of the United States, and only days before the District Court in South Carolina, pursuant to our remand, was to accept briefing on the question whether Padilla had been properly designated an enemy combatant by the President.

The same day as Padilla's indictment was unsealed in Florida, the government filed with us a motion pursuant to Supreme Court Rule 36 for authorization to transfer Padilla to Florida, a motion that included no reference to, or explanation of, the difference in the facts asserted to justify Padilla's military detention and those for which Padilla was indicted. In a plea that was notable given that the government had held Padilla militarily for three and a half years and that the Supreme Court was expected within only days either to deny certiorari or to assume jurisdiction over the case for eventual disposition on the merits, the government urged that we act as expeditiously as possible to authorize the transfer. The government styled its motion as an "emergency application," but it provided no explanation as to what comprised the asserted exigency.

When we did not immediately authorize Padilla's transfer as requested, the government, rather than file its response to Padilla's petition for certiorari as scheduled, sought and received from the Supreme Court an extension of time until December 16 within which to file that response.

Instead of simply granting the motion for immediate authorization to transfer Padilla, we directed the parties to brief the question whether, in light of the difference in the facts asserted to justify Padilla's military detention on which our decision was premised and the facts underlying the charges in Padilla's indictment in Florida, our opinion should be vacated in the event of Padilla's transfer. In

response to our request for briefing, the government has now taken the position that our decision of September 9 should be withdrawn entirely.

## II.

Under Supreme Court Rule 36, the custodian of a habeas petitioner whose case is pending before the Supreme Court "may not transfer custody to another person unless the transfer is authorized under this Rule." Rule 36 further provides that "[u]pon application by a custodian, the court, Justice, or judge who entered the decision under review may authorize transfer and the substitution of a successor custodian as a party." There is no articulated purpose for this rule, the rule does not specify a standard upon which a requested transfer should be authorized or denied, and it is unclear to us what the applicable standard ought to be or whether the rule even applies in a circumstance such as this. This said, to the extent our authorization is needed, we believe there are two reasons for us to deny the government's motion, as well as its suggestion for vacatur of our opinion.

## A.

First, the government's actions since this court's decision issued on September 9, culminating in and including its urging that our opinion be withdrawn, together with the timing of these actions in relation both to the period for which Padilla has already been held and to the government's scheduled response to Padilla's certiorari petition in the Supreme Court, have given rise to at least an appearance that the purpose of these actions may be to avoid consideration of our decision by the Supreme Court.

We are not in a position to ascertain whether behind this appearance there is the actual fact, because the government has not explained its decisions either publicly or to the court. The media has variously reported that the government's abrupt change in course was prompted by its concern over Supreme Court review of our decision and/or its concern for disclosure of the circumstances surrounding its receipt of the information regarding Padilla's plans to blow up buildings in American cities or of the identities and locations of the persons who provided that information. In one instance, immediately

after we had initially declined to act on the government's transfer motion, these concerns were detailed in the press and attributed to former and current Administration officials speaking on the condition of anonymity. It was even reported that the government had considered transfer and criminal prosecution of Padilla before its argument in this court that military detention of Padilla was necessary in the interest of national security. No such explanations have been provided to the court, however.

It should go without saying that we cannot rest our decisions on media reports of statements from anonymous government sources regarding facts relevant to matters pending before the court, nor should we be required to do so or to speculate as to facts based upon such reports. The information that the government would provide to the media with respect to facts relevant to a pending litigation, it should be prepared to provide to the court. Nevertheless, even if these were the government's concerns, neither concern would justify the intentional mooting of the appeal of our decision to the Supreme Court after three and a half years of prosecuting this litigation and on the eve of final consideration of the issue by that court.

As for the first of these reported concerns, we would regard the intentional mooting by the government of a case of this import out of concern for Supreme Court consideration not as legitimate justification but as admission of attempted avoidance of review. The government cannot be seen as conducting litigation with the enormous implications of this litigation — litigation imbued with significant public interest — in such a way as to select by which forum as between the Supreme Court of the United States and an inferior appellate court it wishes to be bound.

As for the second reported concern, the means by which the government may have come by its information concerning Padilla, as well as the current locations of any persons who might have provided that information, are legally irrelevant to the appeal of our decision now pending before the Supreme Court. These concerns would be relevant, if at all, only at the hearing required by *Hamdi* v. *Rumsfeld* to determine the legitimacy of the President's designation of Padilla as an enemy combatant. And if the government did fear "sensitive evidentiary issues" that might arise in this hearing, it could have sought

a stay from the district court, continued to pursue its argument before the Supreme Court that the President possesses the authority from Congress to detain persons such as Padilla, and transferred Padilla to civilian law enforcement custody and initiated prosecution only after final Supreme Court resolution of the pending appeal, whether favorable or unfavorable. Thus, in the end, concerns over evidentiary issues could no more justify the government's actions than could an interest in avoiding Supreme Court review.

That neither of these speculated reasons would have justified the government's actions is not to say that there are not legitimate reasons for those actions. There may well be. For example, the government could have come to believe that the information on which Padilla has been detained is in fact not true or, even if true, is not sufficiently reliable to justify his continued military detention (although to serve as legitimate basis for its actions the government would have had to come to such belief based upon information or intelligence acquired since the issuance of our decision). Of course, if the government had come to so believe, it is expected that it would have informed this court or the Supreme Court and *then* proceeded as it has. But any legitimate reasons are not evident, and the government has not offered explanation. Absent explanation, our authorization of Padilla's transfer under the circumstances described and while the case is awaiting imminent consideration by the Supreme Court would serve only to compound the appearance to which the government's actions, even if wholly legitimate, have inescapably given rise.

### B.

Second, apart from the need to protect the appearance of regularity in the judicial process, we believe that the issue presented by the government's appeal to this court and Padilla's appeal to the Supreme Court is of sufficient national importance as to warrant consideration by the Supreme Court, even if that consideration concludes only in a denial of certiorari.

For four years, since the attack on America of September 11, 2001, a centerpiece of the government's war on terror has been the President's authority to detain militarily persons who, having engaged in acts of war against the United States abroad, have crossed our borders

with the avowed purpose of attacking this country and its citizens from within — the kind of persons who committed the atrocities of September 11. The President himself acted upon the belief that he possessed such authority and that such authority was essential to protect the Nation from another attack like that of September 11 when he designated Padilla an enemy combatant, declared that Padilla "represent[ed] a continuing, present and grave danger to the national security of the United States," and directed the Secretary of Defense to assume and maintain custody over Padilla. The government's belief in the indispensability to our national security of the President's authority to detain enemy combatants such as Padilla was reaffirmed by the Attorney General when he stated at the time that our opinion issued that "the authority to detain enemy combatants like Jose Padilla plays an important role in protecting American citizens from the very kind of savage attack that took place almost four years ago to the day." And though we limited our holding to the circumstance where the President detains persons who have associated with enemy forces abroad, taken up arms on behalf of such forces, and thereafter entered into this country with the avowed purpose of prosecuting war against America on her own soil, we ourselves recognized the "exceeding importance" of the issue presented, even as so limited.

On an issue of such surpassing importance, we believe that the rule of law is best served by maintaining on appeal the status quo in all respects and allowing Supreme Court consideration of the case in the ordinary course, rather than by an eleventh-hour transfer and vacatur on grounds and under circumstances that would further a perception that dismissal may have been sought for the purpose of avoiding consideration by the Supreme Court.

Accordingly, for the reasons stated, we deny both the government's motion for authorization to transfer and its suggestion of vacatur of our opinion of September 9, and thereby maintain for the Supreme Court the status quo while it considers the pending petition for certiorari.

## III.

Because of their evident gravity, we must believe that the consequences of the actions that the government has taken in this important

case over the past several weeks, not only for the public perception of the war on terror but also for the government's credibility before the courts in litigation ancillary to that war, have been carefully considered. But at the same time that we must believe this, we cannot help but believe that those consequences have been underestimated.

For, as the government surely must understand, although the various facts it has asserted are not necessarily inconsistent or without basis, its actions have left not only the impression that Padilla may have been held for these years, even if justifiably, by mistake — an impression we would have thought the government could ill afford to leave extant. They have left the impression that the government may even have come to the belief that the principle in reliance upon which it has detained Padilla for this time, that the President possesses the authority to detain enemy combatants who enter into this country for the purpose of attacking America and its citizens from within, can, in the end, yield to expediency with little or no cost to its conduct of the war against terror — an impression we would have thought the government likewise could ill afford to leave extant. And these impressions have been left, we fear, at what may ultimately prove to be substantial cost to the government's credibility before the courts, to whom it will one day need to argue again in support of a principle of assertedly like importance and necessity to the one that it seems to abandon today. While there could be an objective that could command such a price as all of this, it is difficult to imagine what that objective would be.

For the reasons stated, the government's motion to transfer and the suggestion that our opinion of September 9, 2005, be vacated are denied.

TRAXLER, Circuit Judge, concurring in part:

I do not think Rule 36 is applicable to this situation. I agree with my colleagues that we should not vacate our earlier opinion.